Helen N. Dean and Forrest V. Dean v. Commissioner.
Dean v. Commissioner
Docket No. 3692-68.
United States Tax Court
T.C. Memo 1970-75; 1970 Tax Ct. Memo LEXIS 280; 29 T.C.M. (CCH) 338; T.C.M. (RIA) 70075; March 31, 1970, filed *280 Petitioner was a 50 percent partner and subsequently sole proprietor of a bookkeeping and tax service business. The business made a short-term loan of $1,000 to one of its clients, which loan was never repaid. In 1963, the business purchased a 31-year old house and garage. The house was converted for use as an office building by the business, and the garage was leased to a client for use as ashop building. Held: 1. The respondent correctly determined that the $1,000 business bad debt did not become totally worthless during the taxable year 1963 under the provisions of section 166(a)(1), I.R.C. 1954. 2. The useful lives for depreciation purposes of the office and shop buildings for the years 1963, 1964, and 1965 determined. 339 Forrest V. Dean, pro se, 778 Rebecca Rd., Lexington, Ky.Frederick W. Krieg, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1963, 1964, and 1965 in the respective amounts of $543.43, $674.86, and $541.84. As a result of concessions by the parties, the issues remaining for our determination are as follows: (1) Whether the partnership, Forrest V. Dean and Associates, sustained a business bad debt in the amount of $1,000 during the year 1963 as provided under section 166(a)(1) of the Internal Revenue Code of 1954. [1]
(2) What were the *282 respective useful lives for depreciation purposes of an office building and shop building to the partnership, Forrest V. Dean and Associates, during the year 1963, and to the petitioner during the years 1964 and 1965. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. A summary of the pertinent facts is set forth below. At the time of filing their petition herein, Forrest V. Dean (hereinafter referred to as petitioner) and Helen N. Dean, husband and wife, had their residence in Lexington, Kentucky. They filed their joint Federal income tax returns for the years 1963, 1964, and 1965 with the district director of internal revenue at Louisville, Kentucky. During 1963, petitioner and William W. Routt were equal 50 percent partners and operated a bookkeeping and tax service. The partnership, known as Forrest V. Dean and Associates (hereinafter referred to as Dean and Associates), terminated on or about December 31, 1963, and thereafter petitioner carried on the bookkeeping and tax service as a sole proprietorship. Issue 1. Business Bad Debt Deduction In 1963, Dean *283 and Associates performed various accounting, collection, and miscellaneous services for the partnership of Moore and McClain, an air-conditioning and heating contractor. In return for these services, Moore and McClain paid Dean and Associates a fee of $70 per week. Sometime in early 1963, at a time when due to financial difficulties Moore and McClain was on the verge of insolvency, Dean and Associates loaned Moore and McClain the sum of $1,000. This loan was not evidenced by a note or other debt instrument, but instead by a deposit slip showing a deposit of $1,000 by Dean and Associates to the bank account of Moore and McClain. Dean and Associates made this loan to preserve the Moore and McClain account so that it would continue to receive the $70 weekly fee therefrom. It was contemplated by the parties that this was merely a temporary loan, which would be repaid immediately upon the collection of various accounts receivable owed to Moore and McClain. In 1963, as soon as Moore and McClain began receiving payments on its outstanding accounts receivable, petitioner requested the partners of Moore and McClain to begin making payments on the loan. At first the Moore and McClain partners *284 promised to commence payments on the loan in the near future, and eventually they did authorize petitioner to draw checks in the amount of $15 or $20 on the Moore and McClain bank account. Petitioner repeatedly made out such checks, but they were never signed by Moore and McClain. When petitioner brought pressure to bear for repayment of the loan, Moore and McClain terminated its contract with Dean and Associates for accounting services, and ceased making the $70 weekly payments for such services. During 1963, in their attempts to secure repayment of the $1,000 loan, petitioner and his partner, William W. Routt, talked with, wrote letters to, and threatened legal action against Moore and McClain. However, this was to no avail and no portion of the loan was repaid during 1963. In the years following 1963, petitioner still hoped to collect some portion of the loan, even though he felt there was very little chance of recovering the entire $1,000 amount. On more than one occasion after 1963, Moore and McClain acknowledged the debt, and indicated they would repay it. The partnership of Moore and McClain was incorporated on or about April 20, 1965, and thereafter filed bankruptcy proceedings *285 340 on or about December 7, 1966. During the bankruptcy proceedings, the $1,000 loan from Dean and Associates was not listed as an obligation of the corporation. No part of the $1,000 was ever repaid during the years subsequent to 1963. In its partnership return for the calendar year 1963, Dean and Associates deducted the $1,000 loan to Moore and McClain as a "Loss on a Business Loan," which deduction was subsequently disallowed by the respondent. Issue 2. Estimated Useful Lives of Office and Shop Buildings In February 1963 Dean and Associates took an option to purchase a house, garage, and lot in Lexington, Kentucky, at a cost of $25,000. The location of the lot and improvements thereon was considered desirable by Dean and Associates inasmuch as it was located at the intersection of two major highways, and across the street from a shopping center. The house was being used as a private residence but petitioner was able to secure the zoning necessary to convert the house to an office building. In May 1963 Dean and Associates exercised its option to purchase the house, garage, and lot and moved its tax and accounting business thereto. The house, which was built in 1932, *286 was made of frame construction with a rock foundation. It consisted of an unfinished basement which had stone walls, a 1,200 square foot first floor containing six rooms (offices), and an attic used for storage. During 1963, shortly after purchase of the house, Dean and Associates covered the floors of all but one room of the house with asphalt tile, placed mahogany paneling on one wall of the reception room and all walls of petitioner's office, and installed fluorescent lighting in the reception room. At the end of 1963, Dean and Associates estimated that the general condition of the office building was such that it would only be useful to the business for a period of 4 years at which time Dean and Associates intended to build or otherwise acquire other office space. Subsequent to 1963, it became evident that petitioner's business would be financially unable to acquire new office space within the originally contemplated 4-year period. Petitioner undertook the following improvements with respect to the office during years subsequent to 1963: replaced wooden supports beneath the office; paneled the office walls half way up (with the exception of petitioner's office and the reception *287 room which were paneled in 1963) and painted or wallpapered the remaining half; extended the fluorescent lighting to portions of the office in addition to the reception room; coated the ceiling with a texture finish; and tarred and reshingled portions of the roof. Throughout the years involved herein, various offices not being used by petitioner's tax and accounting business were rented to clients and others. Petitioner was still conducting his tax and accounting business in the office building at the time of trial. At that time, while the roof did not leak due to petitioner's repairs thereto, various walls of the office had cracks in the plaster, the floors were giving, and the foundation was settling. The garage was leased to a client for use as a shop building. It was built in 1932 primarily of frame construction with the exception of two walls that were partially constructed with concrete block. Following the purchase of the garage, petitioner added a concrete floor thereto. Beginning in 1963 and throughout the years in issue here, the shop building was used by the lessee for parking, and making minor repairs to construction equipment. At the time of trial, the shop building *288 was still being leased by petitioner although its use was changed somewhat because it was leaking. The $25,000 total purchase price of the house, garage, and land was allocated by Dean and Associates and petitioner as follows: $12,000 to the cost of the house; $2,000 to the cost of the garage; and $11,000 to the cost of the land. For depreciation purposes, Dean and Associates in its return for 1963, and petitioner in his returns for 1964 and 1965, estimated the useful lives of the office and shop buildings to be 4 years each. In his statutory notice, respondent determined that the useful lives of the office building and the shop building were 25 years and 50 years respectively. Opinion Issue 1. Business Bad Debt Deduction Petitioner contends that the $1,000 advance to Moore and McClain is deductible by Dean and Associates in the year 1963 as a business bad debt under the provisions of section 166(a)(1). That section allows a deduction for "any debt which becomes 341 worthless within the taxable year." [2] Respondent concedes that the $1,000 deposit by Dean and Associates to the bank account of Moore and McClain constituted a loan, thereby creating a bona fide debt owed *289 by Moore and McClain to Dean and Associates. Having conceded the existence of a debt, respondent advances a two-fold position: (1) that petitioner has failed to show that such debt has not been repaid and (2) that petitioner has not established that the debt became worthless during 1963. With respect to respondent's first contention, we observe that he has conceded that the $70 weekly payments were in consideration for services rendered by Dean and Associates and were in no way intended to be applied to reduce the $1,000 loan. Furthermore, petitioner gave credible testimony before us that no portion of the loan has ever been repaid, and careful scrutiny of the record reveals nothing to the contrary. We therefore hold that petitioner has sustained his burden of proving that the debt has never been repaid. The question thus narrows to one of whether the debt became worthless during 1963 as claimed by petitioner. The question of year of worthlessness is one of fact to be determined from all the facts and *290 circumstances of each individual case. Of course, the burden of proof with respect to this issue rests squarely with the petitioner. Rule 32, United States Tax Court Rules of Practice.
Petitioner has established through credible testimony that the $1,000 loan was intended by the parties as a short-term loan to be repaid directly from the collection proceeds of various accounts receivable owed to Moore and McClain; that as soon as Moore and McClain began receiving payments in 1963 on such receivables, petitioner requested repayment of the loan, that on repeated occasions during 1963 petitioner drew checks on the Moore and McClain bank account intended as installment payments on the loan, which checks were never signed by the Moore and McClain partners; that during 1963 petitioner and his partner made numerous attempts to secure repayment of the loan including conversations with, letters written to, and threats of legal action against Moore and McClain; and finally that all such efforts were to no avail so that no portion of the $1,000 loan was repaid during 1963. This evidence certainly shows that petitioner made reasonable and diligent efforts to collect the debt during 1963. However, *291 a mere showing of demand and refusal to pay does not necessarily lead to a conclusion of worthlessness of the debt because it does not follow from such a showing that the debtor is unable to pay. Walter J. Runyon, 8 T.C. 350, 357 (1947); and Prescott State Bank, 11 B.T.A. 147, 148 (1928). In our opinion, this point strikes the Achilles' heel of petitioner's case. Petitioner has failed to introduce any evidence concerning Moore and McClain's financial condition during and at the end of 1963. Inability of the debtor to pay the debt is one of the primary indicia of worthlessness, and numerous cases have denied a bad debt deduction because there was no showing of the debtor's total lack of ability to pay the debt. Miriam Coward Pierson, 27 T.C. 330, 338-339 (1956), affirmed 253 F. 2d 928 (C.A. 3, 1958); Trinco Industries, Inc., 22 T.C. 959, 965 (1954). It is not at all clear from the record herein that the financial position of Moore and McClain during and at the end of 1963 was such as to foreclose any reasonable expectation of eventual collection of at least a portion of the $1,000 debt sometime after 1963. To the *292 contrary, the record affirmatively shows that Moore and McClain continued to operate its business (albeit in corporate form after April 20, 1965) for nearly 3 years following 1963. See Trinco Industries, Inc., supra at page 965. Moreover, petitioner himself testified that Moore and McClain acknowledged the debt subsequent to 1963, and that after 1963 he still entertained some hope of recovering a portion thereof. Such a hope or expectation of partial collection in the period following 1963 does not appear to be unreasonable under the facts and circumstances that the record shows to have been in existence at that time. In light of the foregoing, we hold that petitioner has failed to establish that the debt involved herein became totally worthless during 1963 as required under section 166(a)(1). Consequently, respondent's 342 disallowance of Dean and Associates' bad debt deduction is hereby sustained. Issue 2. Estimated Useful Lives of Office and Shop Buildings Respondent states on brief that there is no dispute between the parties concerning the fact that Dean and Associates for the taxable year 1963, and petitioner for the taxable years 1964 and 1965, are entitled *293 to a reasonable allowance for depreciation of the office and shop buildings as provided under section 167(a)(1). [3] Furthermore, the parties have stipulated that $12,000 was properly allocated as the cost basis of the office building and $2,000 was properly allocated as the cost basis of the shop building. Additionally, respondent does not seem to contest the straight line method of depreciation used by Dean and Associates and petitioner in their returns with respect to both buildings. Thus, the only point of dispute between the parties appears to be the respective useful lives of the office and shop buildings. In his statutory notice herein, respondent determined that the useful lives for depreciation purposes of the office building and the shop building were 25 years and 50 years respectively. Petitioner has the burden of proving error in this determination. M Pauline Casey, 38 T.C. 357, 381 (1962). *294 The useful life of an asset is the period over which such asset may reasonably be expected to be useful to the taxpayer in his trade or business. Massey Motors Inc., 364 U.S. 92 (1960); and section 1.167(a)-1(b), Income Tax Regs.
In our view petitioner has successfully sustained his burden of showing that the useful lives of the two buildings in his tax and accounting business were shorter than that determined by respondent. Petitioner's evidence shows that the two buildings were 31 years old at the time of purchase in 1963; that both buildings consisted primarily of frame construction; that with respect to the office its walls were cracking, the floor was giving way, and the foundation was settling; and that the roof of the shop building was leaking. Taking into account the advanced age, frame construction, and deteriorating condition of the office and shop buildings, we find respondent's determination regarding the estimated useful lives thereof to be excessive. On the other hand, the record herein does not support petitioner's rather pessimistic estimates of the useful lives of the two buildings in his tax and accounting business. Petitioner argues that at the *295 end of 1963 the condition of the office and shop buildings was such as to make them unsuitable for business use for a period of more than 4 years. Even during the years subsequent to 1963 when petitioner realized he was financially unable to acquire a new office and undertook major improvements with respect to the buildings, petitioner contends that the estimated useful life thereof could be no longer than 8 years. We recognize that the determination of the period of use of an asset in the taxpayer's business must be based upon facts that were known or could resonably have been anticipated at the time the returns were filed for the years in issue. New England Tank Industries, Inc., 50 T.C. 771, 781 (1968) affirmed per curiam 413 F. 2d 1038 (C.A. 1, 1969), and Westinghouse Broadcasting Co., 36 T.C. 912, 921 (1961), affirmed 309 F. 2d 279 (C.A. 3, 1962). For this reason, we have not given any weight to the fact that petitioner was still using the office building for his tax and accounting business and leasing the shop building at the time of trial (i.e., 6 years after its purchase in 1963). Nevertheless, petitioner's evidence of *296 the condition of the buildings (e.g., cracks in walls, giving of the floors, and settling of the foundation of the office) at the time Dean and Associates filed its 1963 return does not in our opinion compel a conclusion that the business would be forced to tear down, sell, or otherwise abandon its use of the two buildings within a 4-year period. Petitioner has failed to produce any evidence that the life of the economic usefulness of the buildings in his business is any less than their anticipated physical life. It is noted that during 1963 Dean and Associates covered the floors of all but one office with asphalt tile; paneled petitioner's office and one wall of the reception room; and installed fluorescent lighting in the reception room. Subsequent to 1963, petitioner undertook the following improvements with 343 respect to the two buildings: replaced wooden supports beneath the office; paneled, wallpapered, and painted the walls of some offices; installed fluorescent lighting in various portions of the office building other than the reception room; coated the ceiling of the office building with a texture finish; tarred and reshingled portions of the office roof; and poured *297 a concrete floor in the shop building. While some of these improvements (especially those undertaken in 1963) were merely surface changes designed to give the house the appearance of an office, other structural improvements (e.g., replacing the wooden supports beneath the office, reshingling the roof of the office, placing a concrete floor in the shop building) undertaken by petitioner after 1963 undoubtedly extended the useful life of the buildings in petitioner's business. Moreover, the fact that petitioner embarked on a continuing program of making such substantial improvements to the buildings would seem to be inconsistent with a plan to abandon the use thereof in the immediate future. Finally, petitioner's testimony that the location of the buildings was ideal for his business purposes, and the fact that the business apparently lacked the funds necessary to construct new offices leads us to believe that during the years in issue petitioner could reasonably have known or anticipated that the buildings would be useful to the business for a period of time in excess of 4 years. Unfortunately, there are not any precise mathematical formulas available to us in determining the appropriate *298 useful lives of the buildings involved herein. Louis Lesser, 42 T.C. 688, 706 (1964), affirmed 352 F. 2d 789 (C.A. 9, 1965). Exercising our best judgment and taking into consideration all the facts and circumstances contained in the record herein, we hold that the useful lives of the office and shop buildings at the end of 1963 were 9 years with respect to each building. We further hold that the substantial improvements made by the petitioner subsequent to 1963 extended the useful life of the office building by 5 years and the useful life of the shop building by 2 years, and therefore the estimated useful lives of the two buildings should be increased accordingly for the years 1964 and 1965. In view of the foregoing, and due to concessions by the parties pertaining to other adjustments made in the notice of deficiency, Decision will be entered under Rule 50. Footnotes
1. Unless designated otherwise, future statutory references will be to the Internal Revenue Code of 1954.↩
2. SEC. 166. BAD DEBTS. (a) GENERAL RULE. - (1) WHOLLY WORTHLESS DEBTS. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year.↩
3. SEC. 167. DEPRECIATION. (a) GENERAL RULE. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, * * *.↩